IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA TORRES and MELCHOR TORRES, individually and as Adminstrators of the Estate of EVERARDO TORRES, and as guardians ad litem for the brother of the Deceased, RAMON TORRES (a minor through his guardians ad litem, MARIA and MELCHOR TORRES) and MELCHOR TORRES, JR.,<br><br>            Plaintiffs,<br>   v.<br><br>CITY OF MADERA, MARCY NORIEGA, individually and as a member of the Madera Police Department, and DOES 1 through 50, inclusive,<br><br>            Defendants.<br>_____<br><br>AND RELATED CONSOLIDATED CASE<br>_____ | CIV F 02-6385 AWI LJO<br><br>Consolidated with CV F 03-5999<br><br>ORDER ON TASER'S MOTION FOR SANCTIONS |

      This consolidated action arises out of the shooting death of Everardo Torres by City of Madera ("the City") police officer Marcy Noriega ("Noriega"). Specifically, Noriega shot Torres while Torres was in the back of her squad car, and Noriega contends that she intended to draw

her non-lethal taser M26 weapon ("M26") but mistakenly drew her firearm instead.  Torres's family filed a lawsuit against Noriega and the City under both federal and state law.  Shortly thereafter, the City filed suit against Taser, Inc. ("Taser") in state court for indemnification/contribution.  Taser removed to this Court and the cases by Torres and the City were consolidated.  In the course of the proceedings, this Court granted partial summary judgment in favor of the City and against the Torreses, and granted full summary judgment in favor of Taser against the City.  Appeals before the Ninth Circuit as to both of these rulings are currently pending.  Taser has filed this motion for sanctions against the City under 28 U.S.C. § 1927 and the Court's inherent powers and argues that the suit by the City was frivolous.  For the reasons that follow, the Court will deny Taser's motion.

## TASER'S MOTION FOR SANCTIONS

*Taser's Argument*

Taser argues that sanctions are appropriate under 28 U.S.C. § 1927, and, in the alternative, the Court's inherent authority.  Taser argues that the City's claims against it were unwarranted and frivolous.  From the outset of the litigation, Taser made repeated requests for a dismissal and provided the City with factual information and legal authority, but the City refused to dismiss the case.  Eventually, the Court granted Taser summary judgment on all claims.  The granting of summary judgment shows that the City's position was frivolous.  Because the City did not dismiss the case, Taser was forced unnecessarily to defend this case.

On July 24, 2003, and on July 30, 2003, Taser's counsel informed the City's counsel that the City's claims were without merit.  See Dubow Declaration at ¶ 2.  Further, in a July 30, 2003, written correspondence, Taser's counsel advised that the products liability claim was improper and asked that it be withdrawn.  See id. at Exhibit B.[1]  On August 1, 2003, Taser's counsel sent a

---

[1] The July 30, 2003, letter points out that the M26 was not used and responds to the City's products liability claims that were based on "training and instructions."  See Dubow Declaration Exhibit B.  The letter points out that "training and instructions" are not products and requests that the City withdraw the claim.  See id.

2

formal written demand to the City's counsel to withdraw the complaint, but instead of a withdrawal, the City sent Taser a proposed First Amended Complaint.  See id. at Exhibits C,[2] D.  On August 15, 2003, Taser responded to the proposed amended complaint and informed the City that the allegations were inaccurate and untrue and lacked a basis in law or fact and warned that Taser intended to obtain all attorney's fees.  See id. at Exhibit E.[3]  The same day, the City sent a responsive letter that disagreed with Taser's assessment and asserted that it would prevail.  See id. at Exhibit F.  On August 26, 2003, the City filed a first amended complaint.[4]  See id. at Exhibit G.  Taser argues that the amended complaint contained allegations that the City knew were false, specifically that Taser sold a weapon and related accessories to the City and that Taser provided training to the City Police Department and Noriega; based on discovery responses in the Torres's suit against the City, Taser argues that it is apparent that the City's counsel knew that these assertions were false.  See id. at Exhibits H, I.[5]  On September 1, 2003, Taser sent a five page correspondence to the City that advised of factual assertions in the amended complaint that were without basis.  See id. at Exhibit J.  Specifically, Taser advised that: (1) there was no nexus between the fact that Noriega was wearing an M26 and the fact that she shot Torres with her firearm; (2) the product liability cause of action fails to identify any products which are

---

[2] Exhibit C is a letter from Taser that was sent to the City the day after Taser filed a Rule 12(b)(6) motion to dismiss.  The motion to dismiss focused on the products liability cause of action, and Exhibit C reiterated the arguments made in the Rule 12(b)(6) motion.  See Dubow Declaration Exhibit C; Court's Docket Doc. No. 5.

[3] In particular, the August 15, 2003, letter states in a general fashion that Taser believed that unidentified allegations were untrue, points out that the particular Taser weapon at issue is not identified and that, although the holster is identified, there are still allegations as to "related accessories."  The letter then warns about Rule 11 sanctions and costs and that Taser found it surprising that the City and Noriega would try to blame Taser for Noriega's error.  See Dubow Declaration Exhibit E.

[4] The City identified the M26 as the weapon at issue, added additional allegations from the original complaint, identified the holster as a product at issue, continued to allege causes of action for products liability, negligence, breach of warranty, contribution and indemnification, and continued to allege that other "related accessories" were at issue.  See Court's Docket Document No. 8; Dubow Declaration Exhibit G.

[5] In response to interrogatories dated December 24, 2002, the City responded that the name of the company that sold the Taser weapon issued to Noriega was A.L.D. Company/De Nio Enterprises ("ALD"), that Taser manufactured the M26 used by Noriega, and that Madera officers Ballard and Dilbeck where the officers who trained Noriega.  See Dubow Declaration Exhibit H (response to Interrogatories 14, 23, and 24).

3

defective; (3) no warranties are identified as made to Noriega; and (4) no relationship between Taser and Noriega is identified. Id. Taser again requested dismissal and stated that it intended to seek monetary sanctions. Id. On November 26, 2003, Taser sent a six page letter to the City's counsel advising why the City's claims were frivolous. See id. at Exhibit K. Specifically, Taser advised the City that: (1) Taser did not sell the M26 that Noriega was wearing; (2) Taser did not sell any of the accessories that Noriega was wearing; (3) Taser did not train the City officers or Noriega on the use of the M26; and (4) there was no proximate cause between the conduct of Taser and Noriega's decision to shoot Torres. See id. Taser's counsel again warned that it would pursue Rule 11 sanctions and fees if the complaint were not dismissed. Id. When the Court granted Taser's motion for summary judgment, the order substantiated many of the representations made by Taser's counsel, which showed a lack of merit to the City's claims. Id. at Exhibit A. This evidentiary chain shows that the City, and its counsel, did not possess the requisite justification to keep Taser in the action.

In the alternative to 28 U.S.C. § 1927, Taser argues that the Court should impose sanctions on the City and/or its counsel Mr. Praet for abuse of the judicial process. Based on the above evidentiary chain, the record supports a finding of bad faith.

Taser requests $208,967.87 in sanctions, which are the fees incurred after the City's refusal to dismiss in July 2003, and is for fees generated in motions practice, written discovery, depositions, pre-trial preparation, and dispositive motions through July 2005.

*The City's Opposition*

The City argues that sanctions are not appropriate under either 28 U.S.C. § 1927 or the Court's inherent authority. The City acknowledges that Taser's counsel sent threatening letters to the City, but the procedural history of the case shows that the threats were hollow. On September 3, 2003, the Court denied Taser's motion to dismiss because the City had filed an amended complaint. However, Taser did not file a motion to dismiss the amended complaint, which would be the natural response to a case that is allegedly frivolous and without merit.

4

Additionally, the summary judgment history shows that summary judgment was not a "slam dunk," since the Court ordered additional briefing on at least three separate issues on March 14, 2005. Further, it took the Court 50 pages to analyze and ultimately grant Taser's motion and the Court agreed that many of the issues were of a first impression, e.g. a definition of the term "use." These first impression issues show a lack of bad faith.

With respect to false allegations, ALD may have completed the sale, but there was evidence upon which an ostensible agency could be found. Although the Court made a factual determination that no agency existed, the facts make it far from clear who sold the M26. Similarly, although technically City police officers actually trained Noriega, Taser offers an 8-hour training course, and the training officers received their training from an agency instructor, and the agency instructors received their training from Taser's Master Instructors who are mandated to use training materials developed by Taser. Given that Taser mandated their training, the City's allegations are not false.

The City also argues that the timing of Taser's motion indicates an improper purpose. The motion was filed at a time that put strains on the City's ability to timely file its opening brief with the Ninth Circuit. Further, the motion was filed more than 30 days after entry of final judgment (more than five months) and a hearing date was set less than 30 days before the scheduled hearing, both of which violate the local rules. See Local Rules 78-230(b), 54-293(a). The motion was filed to intimidate the City into abandoning its meritorious appeal and was untimely; it should therefore be denied.

Further, there is an inadequate basis for the Court to find bad faith. In summary judgment, the Court acknowledged that there were "no cases" on point and in fact, requested additional briefing on multiple issues. Innovative arguments are not the type of frivolous cases that the Ninth Circuit condemns. Because the City did not act in bad faith, sanctions are not warranted under either the Court's inherent authority or 28 U.S.C. § 1927.

*Taser's Reply*

Taser responds that the correspondences show that Taser has viewed this case as frivolous from its inception and has warned the City and Mr. Praet that it would seek sanctions/fees. However, the City made convoluted arguments without sufficient supporting evidence. The City's insistence at proceeding with this case resulted in years of unnecessary discovery and ultimately, summary judgment. Taser did not file a Rule 12(b)(6) motion because its counsel believed that the allegations were sufficiently vague and broad that a 12(b)(6) would likely be denied. Also, the fact that additional briefing was requested is ambiguous, and there is a difference between a case of first impression and a frivolous case with bizarre facts. Finally, this motion is timely because judgment was not entered, so by rule, judgement occurred by operation of law 150 days after entry of the order. Taser had an additional 30 days to file this motion from the date of judgment, and Taser filed on the 30th day. This motion was timely.

**Legal Standard**

"Sanctions are an appropriate response to willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 965 (9th Cir. 2004); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). There are three primary mechanisms through which a court may sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court; (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings; and (3) the court's inherent power. Fink, 239 F.3d at 991. "Each of these sanctions alternatives has its own particular requirements, and it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy." Christian v. Mattel, Inc., 286 F.3d 1118, 1131 (9th Cir. 2002).

      a.    **28 U.S.C. § 1927 Sanctions**

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 is "concerned only with limiting the abuse of court processes [and is] indifferent to the equities of a dispute and to the values advanced by the substantive law." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980); T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso., 809 F.2d 626, 638 (9th Cir. 1987). "Sanctions are available under § 1927 . . . only if the attorney 'unreasonably and vexatiously' multiplies proceedings." Gomez v. Vernon, 255 F.3d 1118, 1135 (9th Cir. 2001); Pacific Harbor Capital, 210 F.3d at 1118. Because sanctions under § 1927 are authorized only for the unreasonable multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun. . . [and] cannot be applied to an initial pleading." In re Keegan Mgmt. Co. Sec. Lit., 78 F.3d 431, 435 (9th Cir. 1996); Zaldivar v. Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986); In re Yagman, 796 F.2d 1165, 1187 (9th Cir.), amended, 803 F.2d 1085 (9th Cir. 1986); Willis v. City of Oakland, 231 F.R.D. 597, 598 (N.D. Cal. 2005). In other words, "The filing of a compliant may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." In re Keegan, 78 F.3d at 435. "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct. It may do so in its discretion." Corley v. Rosewood Care Ctr., 388 F.3d 990, 1014 (7th Cir. 2004). Sanctions under § 1927 may be imposed when: (1) the attorney unreasonably multiplied the proceedings; (2) the attorney's conduct was unreasonable and vexatious; and (3) the conduct resulted in an increase in the cost of the proceedings. See 28 U.S.C. § 1927; B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002); Pickern v. Pier 1 Imps. (U.S.), Inc., 339 F.Supp.2d 1081, 1091 (E.D. Cal. 2004). "For sanctions . . . to be appropriate, something more than a lack of merit is required." Schwarz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003); National Licensing Ass'n, LLC v. Inland Joseph Fruit Co., 2004 U.S. Dist. LEXIS 27487

at *12 (W.D. Wash. 2004). An award of sanctions under 28 U.S.C. § 1927 requires a finding of recklessness or bad faith. B.K.B., 276 F.3d at 1107; Cline v. Industrial Maintenance Eng'g & Const. Co., 200 F.3d 1223, 1236 (9th Cir. 2000); T.W. Electrical, 809 F.2d at 638. "We assess an attorney's bad faith under a subjective standard." Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000); see New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989). As the Ninth Circuit has explained,

> Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent. Tactics undertaken with the intent to increase expenses, or delay may also support a finding of bad faith. Even if an attorney's arguments are meritorious, his conduct may be sanctionable if in bad faith.

New Alaska, 869 F.2d at 1306 (internal citations omitted). Further, "if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. . . . Reckless nonfrivolous filings, without more, may not be sanctioned." B.K.B., 276 F.3d at 1307. "The bad faith requirement sets a high threshold." Primus Auto. Fin. Serv. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997). Where no previous court has considered a particular or novel issue, sanctions under § 1927 generally are disfavored. See Proctor & Gamble Co. v. Amway Corp., 280 F.3d 519, 531-32 (5th Cir. 2002); Serrato by & Through Serrato v. John Hancock Life Ins. Co., 31 F.3d 882, 887 n.2 (9th Cir. 1994). If sanctions are awarded, § 1927 "authorizes the taxing of only excess costs incurred because of an attorney's unreasonable conduct; it does not authorize imposition of sanctions to reimburse a party for the ordinary costs of trial." United States v. Associated Convalescent Enterprises, Inc., 766 F.2d 1342, 1347 (9th Cir. 1985); see New Alaska, 869 F.2d at 1306; Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1081 (9th Cir. 1988).

    **b.**    **Inherent Authority Of The Court**

A court has the inherent power to sanction parties or their lawyers if they act in "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," as well as for "willful[] abuse [of the] judicial processes."

Roadway Express, 447 U.S. at 766; Gomez, 255 F.3d at 1135. The court's "inherent power 'extends to a full range of litigation abuses.'" Fink, 239 F.3d at 992. In order to sanction a litigant under the court's inherent powers, the court must make a specific finding of "bad faith or conduct tantamount to bad faith." Gomez, 255 F.3d at 1134; Fink, 239 F.3d at 994.

> Under this standard, although recklessness, of itself, does not justify the imposition of sanctions, sanctions are available when recklessness is combined with an additional factor such as frivolousness, harassment, or an improper purpose. Sanctions, then, are justified when a party acts for an improper purpose- even if the act consists of making a truthful statement or a non-frivolous argument or objection.

Gomez, 255 F.3d at 1134 (citing Fink, 239 F.3d at 992, 994). "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees." Fink, 239 F.3d at 992. A legal argument is frivolous if, "at the time of filing, a competent attorney after a reasonable investigation could not have determined that a well-founded basis in fact and in law or a good faith argument for extension of law supported the filing." Les Shockley Racing, Inc. v. National Hot Rod Ass'n, 884 F.2d 504, 510 (9th Cir. 1989) (discussing Rule 11 sanctions). "[I]nherent powers must be exercised with restraint and discretion." Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991); B.K.B., 276 F.3d at 1108.

**Discussion**

As an initial matter, the Court does not find that Taser's motion is untimely. The City's opposition relies on Local Rule 54-293(a), which deals with motions for attorney's fees. In relevant part, the Local Rule reads:

> Motions for awards of attorneys's fees to prevailing parties pursuant to statute shall be flied not later than thirty (30) days after entry of final judgment. Such motions are not governed either by Fed. R. Civ. P. 59(e) ["Motion to Alter or Amend Judgment"] or by L.R. 54-292 ["Costs"], but are governed by L.R. 78-230 ["Civil Motion Calendar and Procedures"]. See also Fed. R. Civ. P. 54(d), 58.

Local Rule 54-293(a). Local Rule 54-293 thus requires that a prevailing party file its motion

within 30 days of entry of final judgment.

Assuming without deciding that Local Rule 54-293(a) applies, the Court agrees with the analysis by Taser. Although summary judgment was granted in favor of Taser, a formal judgment was not entered. The summary judgment motion would have become final 150 days after entry, that is December 9, 2005. See Fed. R. Civ. Pro. 58. Thirty days from December 9 was January 8, 2005, a Sunday. See Fed. R. Civ. Pro. 6(a). Taser's motion was filed on January 9, 2006. Assuming Local Rule 54-293 applies, Taser's motion was timely.

With respect to the substance of Taser's motion, the evidence submitted clearly shows that Taser has always viewed the City's lawsuit as being frivolous and wholly without merit. Taser's submissions include several letters directed to the City's counsel whereby Taser's intention to obtain sanctions was stated. Equally clear is that the City disagreed with Taser's view of the evidence. So much so, in fact, that the City continues to pursue its claims in the Ninth Circuit Court of Appeals. In order for the Court to find bad faith and impose sanctions, a showing of "recklessness plus," for example frivolousness, vindictiveness or vexatiousness, is necessary. See Gomez, 255 F.3d at 1134; New Alaska, 869 F.2d at 1306. Bad faith is a high standard and is analyzed on the subjective belief of the attorney for purposes of § 1927. See Pacific Harbor Capital, 210 F.3d at 1118; Batarse, 115 F.3d at 649. Taser's focus is that the City's claims are frivolous and convoluted.

This case involved unique facts and rather novel arguments in relation to those facts.[6] The City sought indemnification/contribution from Taser under theories of strict products liability for defective design and failure to warn, negligent design of the M26 and accessories, negligent warning/training, and breach of implied and express warranties. In resolving the case, the Court requested additional briefing on: (1) the effects of an exclusive distributor within the chain of distribution and the requirement of privity for claims of breach of warranty; (2) whether

---

[6] The parties are generally referred to the Court's order on Taser's motion for summary judgment, which is Document Number 132 in the Court's Docket.

case law, and in particular California case law, if any, reflects imposition of strict products liability on a defendant when the defendant's product was not "used;" (3) whether training/training materials may be considered products for purposes of strict products liability; (4) Taser's claims of negligent training; and (5) the issues of the existence of a design defect and breach of duty of care in the design of the Taser M26.  See Court's Docket Document No. 99. Additionally, the Court allowed Taser to move for summary judgment on the City's claims regarding the holster.  See id.  The Court requested additional briefing because it believed that further argumentation and research was necessary to properly analyze and rule on the issues and claims presented.

      Even after further briefing was submitted, no additional cases on many of these issues were located and the parties relied more on general principles in making their arguments.  In other words, the additional briefing yielded neither disputed issues of fact nor cases that directly addressed the issues that were of concern to the Court.  For example, no cases were cited/found by the parties that discussed whether a product had been "used," as that term would apply to the facts in this case.[7]  The City argued that "use" was not a requirement for the risk-benefit products liability theory and that Noriega was in any event "using" the Taser because, although she did not actually fire the M26, she was wearing it at her side.  The Court rejected both arguments and found that the argument that Noriega used the M26 by wearing it was too great a stretch for the definition of "use."  While the Court granted summary judgment, the Court does not believe that the argument that Noriega was "using" the M26 because she was wearing it was so improper as to warrant sanctions since there was an absence of case law on this point.  Cf. Serrato, 31 F.3d at 887 n.2.

      With respect to the effects of an exclusive distributorship on the requirement of privity for warranty claims, the City focused more on establishing privity through agency and conduct.

---

[7]Again, the parties are referred to the Court's order on Taser's summary judgment.  See Court's Docket Document No. 132.

In particular, the City argued that *U.S. Roofing v. Credit Alliance Corp.*, 228 Cal.App.3d 1431 (1991) was analogous and could establish privity through conduct.  After reviewing that case and cases citing to and distinguishing it, the Court concluded that the facts of this case were not sufficiently similar for *U.S. Roofing* to establish privity.  Although reliance on that case did not aid the City, simply because an argument is not "airtight" does not mean that it is reckless or in bad faith.  Cf. Warren v. City of Carlsbad, 58 F.3d 439, 444 (9th Cir. 1995).  While reliance on *U.S. Roofing* was insufficient for summary judgment, it is sufficient to counsel against an award of sanctions.

Also, the City argued that there was an agency relationship between ALD and Taser that could supply privity.  The Court held that e-mails, conduct by ALD and Taser, and the distributorship agreement between ALD and Taser were insufficient to establish an agency relationship.  However, the Court is unaware of any cases that had addressed Taser's sales practices or training programs and practices, and the parties provided no cases dealing with some other entity's similar practices.  The sales and training practices associated with Taser in this case were sufficiently unique to warrant exploration by the City.  In particular, Taser sent the City a sample M26 and referred the City to ALD, and Taser certified master instructors and required that they teach from Taser-approved materials, the master instructors taught members of a police force, and then those police officers taught their fellow officers.  No cases were found or cited to the Court that involved a similar "training chain."  The City also relied on this "training chain" for their claims of negligent training.  Although this Court rejected Taser's arguments regarding agency for purposes of privity and found no negligence regarding training, the Court cannot say that basing arguments on Taser's sales and training practices were so frivolous and reckless as to warrant sanctions.

With respect to "training" and "training materials," the City's products liability argument with respect to "training" was frivolous.  "Training" is clearly a service and not a product.  "Training materials," however, was a closer question.  The cases cited to, and/or found by, the

12

Court did not involve manuals or training materials, but instead involved a mushroom guide and aeronautical charts. In granting summary judgment, the Court found the training materials to be more analogous to the mushroom guide than to the aeronautical charts and held that the training materials were not the proper subject of a products liability case. Although case law is resistant to making ideas and books the basis of a products liability suit, the absence of a case addressing something closely similar to training materials counsels against the imposition of sanctions. Cf. Serrato, 31 F.3d at 887 n.2.

With respect to making knowingly false claims, the City's allegations in its amended complaint that Taser sold the M26's and trained Noriega are in tension with the City's discovery responses in the Torres suit.[8] Torres interrogatory 23 asked who manufactured the M26 that Noriega was issued, and the City replied that Taser was the manufacturer. See Dubow Declaration Exhibit H. Torres interrogatory 24 asked who sold the M26 that was issued to Noriega, to which the City replied ALD, did not answer "Taser," and did not indicate that ALD was the alleged agent of Taser. See id. During summary judgment, and again in defense of this motion, the City argued that ALD was the agent of Taser. If ALD was the agent of Taser, then the sale of the M26's to the City could be imputed to Taser. This agency theory, however, should have been expressly pled in the complaint and the City's loose use of the term "sold" in its complaint is rather misleading since ALD directly sold the M26 to the City and the City knew it. Similarly, the City also knew who trained Noriega. The issue of the City's responses to interrogatory 14 and request for production 39 are not as straightforward as the responses to interrogatories 23 and 24. Interrogatory 14 is expressly limited to the Madera police officers who trained Noriega. See id. By listing Ballard and Dilbeck, the City was providing the answer that was expressly called for in the interrogatory. Request for production 39 requested all documents relating to the name, rank, and position of the instructors who taught Noriega the M26 qualifying

---

[8] The City's interrogatory and request for production responses were signed December 24, 2002, and August 26, 2003, respectively, and the City's counsel signed the original and amended complaints on June 10, 2003, and August 25, 2003, respectively. See Dubow Declaration Exhibits H, I; Courts Docket Document Nos. 1, 8.

course. See id. at Exhibit I. The reference to the name, rank and position of the instructors and the reference to "qualification course" reasonably seem to refer to the City's individual program, and listing Ballard as the person who so trained Noriega was in line with the City's prior response to interrogatory 14. Nevertheless, the City and Noriega herself clearly knew the identity of the people who directly trained Noriega, and those people were employees of the City. The City's theory essentially was that Taser certified master instructors, master instructors could only teach from Taser approved materials, the master instructor in this case was London Lewis who was an ALD employee, Lewis trained Ballard and Dilbeck, and then Ballard and Dilbeck trained Noriega. This reflects that Taser was not the entity that directly trained Noriega. This indirect training chain should have been expressly pled, or clearer reliance on agency principles should have been made. Nevertheless, Taser has not argued that it was unable to ascertain the City's theory during discovery or that it was surprised by the City's theories during summary judgment, and the City's theories were ultimately rejected at summary judgment. The allegations in the amended complaint are not greatly inconsistent with the City's discovery responses if Taser is viewed as an "indirect" trainer or seller who operated with and/or through ALD and ALD employees, which was and is the position taken by the City. The City could have and should have been more careful and precise in its amended complaint. However, the Court does not see harm in this case by the City's failure to allege "indirect" training or selling, and as mentioned above, the sales and training practices of Taser are unique enough to warrant exploration, and counsel against the imposition of sanctions.

The Court agrees with Taser that the City's claims were tenuous, and some simply should not have been made. Other claims made by the City, however, had a firmer basis. The Court stands by its original analysis of Taser's summary judgment motion and believes that summary judgment in favor of Taser was appropriate. That summary judgment was granted, however, does not in itself make sanctions appropriate. While discussing 42 U.S.C. § 1988, the Supreme Court admonished, "It is important that a district court resist the understandable temptation to

14

engage in post hoc reasoning by concluding that, because a plaintiff did not prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims . . . ." Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978); see also In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 796 (3d Cir. 1999) (quoting *Christianburg* and discussing sanctions under 28 U.S.C. § 1927). "Restraint [in imposing sanctions] is particularly important where . . . the case presents complex factual and legal issues." In re Orthopedic, 193 F.3d at 796 (citing Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1213 (6th Cir. 1997); In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990); United States v. Alexander, 981 F.2d 250, 253 (5th Cir. 1993)).  As a whole, the Court found the City's case to be challenging and unique, both factually and legally, which was one of the reasons why the Court requested additional briefing on numerous issues.  By in large, the theories advocated by the City in the context of the facts of this case are sufficiently novel that the Court is unwilling to impose sanctions against either the City or its attorney.  Taser indicates that it has incurred approximately $200,000 to defend a frivolous lawsuit.  There is no doubt that these are substantial fees.  However, that such a significant amount of time was spent in the successful defense of this case tends to suggest that the issues were complex and not as straight forward and frivolous as has been argued.

   Additionally, it is not clear that the City has unnecessarily multiplied the proceedings. The initial letters in July and August 2003 sent by Taser focus on the lack of specificity within the original complaint and then challenge the products liability cause of action because the M26 was not "used" and training is not a "product."  See Dubow Declaration Exhibits B, C.  No mention is made of the City's negligence or breach of warranty claims.  Taser's Rule 12(b)(6) motion tracked its initial letter to the City.  Cf. id. at Exhibit B with Court's Docket Document No. 5.  Although the City's amended complaint mooted that motion, Taser chose not to refile its 12(b)(6) motion against the amended complaint.  The Rule 12(b)(6) motion would have required slight modification since the holster and the M26 product were now specifically identified.

However, arguments regarding "use" could still have been made. Since no cases were presented or found regarding "use" with respect to summary judgment, no cases would have been found at the time of the amended complaint. As in the motion for summary judgment, the Court would have likely sustained a motion to dismiss the strict liability claim due to lack of "use" of the M26.[9] The refiling of Taser's 12(b)(6) motion would have likely pared down and clarified the claims made in the amended complaint and resulted in less discovery and expense.[10]

Courts have sanctioned parties under § 1927 for filing amended complaints, but generally in situations in which the court had previously dismissed claims that were subsequently repled without material alteration. See, e.g., Wages v. IRS, 915 F.2d 1230, 1233, 1235-36 (9th Cir. 1990); Magin v. Monsanto Co., 2005 U.S. Dist. LEXIS 570, 18-19 (E.D. Ill. 2005). Here, the City's amended complaint did not include causes of action that had been previously dismissed. Also, even if the City had responded to Taser's July 30 and August 1, 2003, letters and dismissed the products liability claim, the lawsuit would have remained and proceeded under the pled negligence and warranty causes of action, and Taser appears to seek sanctions for the entirety of this litigation. In this context, the filing of the amended complaint is arguably more analogous to the filing of an original complaint than to post complaint tactics and motions. Cf. In re Keegan, 78 F.3d at 435 (noting that § 1927 is not concerned with the filing of the initial complaint). Viewed in this manner, Taser has not identified conduct that unreasonably multiplied the proceedings or identified anything other than the "ordinary cost of trial," which are not available

---

[9] Further, if Taser had included its argument that training is not a product, which was part of Taser's July and August letters, that argument would likely have been sustained.

[10] Although the 12(b)(6) motion that was filed by Taser would not have resulted in the dismissal of the amended complaint, it also would not have resulted in the dismissal of the original complaint because Taser did not challenge the negligence or warranty claims.
Further, Taser informed the City that the City's response to the Torres Family's interrogatories and requests for production were inconsistent with allegations made in the complaint, i.e. Taser did not sell the M26's to the City nor did Taser train Noriega. Taser told the City that if the City did not withdraw the complaint by December 11, 2003, then Taser would file for Rule 11 sanctions. See Dubow Declaration Exhibit K. Taser, however, did not file for Rule 11 sanctions on or after December 11, 2003. The filing of a Rule 11 motion in December of 2003, as apparently planned by Taser, may have led to a further paring down of issues, less discovery, and less expense.

under § 1927.  See Associated Convalescent, 766 F.2d at 1347-48.

Sanctions under 28 U.S.C. § 1927 are not mandatory, and a court may decline to impose sanctions even if it finds bad faith.  See Corley, 388 F.3d at 1014.  Given the novelty of the issues and facts presented, even though some of the claims made were frivolous, the Court will not impose sanctions.  For the same reasons, and given the special emphasis on restraint in imposing sanctions pursuant to the Court's inherent authority, the Court will not award sanctions pursuant to its inherent authority.

## CONCLUSION

This was a difficult and frustrating case for all involved.  The respective parties contend that sanctions are either clearly appropriate or clearly inappropriate.  The case for or against sanctions is not as clear cut as either party contends.  The City should have pared its complaint down and been more careful with the wording of its allegations, but even in the absence of some claims, there was a basis for other claims that made their presentation to the Court not wholly unreasonable.  Even though summary judgment was granted and Taser's positions largely vindicated, the Court should be careful in its postmortem review of the case.  The arguments raised and the factual situation presented were sufficiently unique to weigh against the imposition of sanctions.

Accordingly, IT IS HEREBY ORDERED that Taser's motion for sanctions is DENIED.

IT IS SO ORDERED.

**Dated:   November 8, 2006**            /s/ Anthony W. Ishii
0m8i78                                    UNITED STATES DISTRICT JUDGE

17